[Civ. No. 64781. Second Dist., Div. One. Oct. 4, 1982.]

JOHN R. KELLY, Plaintiff and Appellant, v.
GENERAL TELEPHONE COMPANY, Defendant and Respondent.

COUNSEL

Daniel C. Lavery for Plaintiff and Appellant.

Albert M. Hart, H. Ralph Snyder, Jr., and Richard E. Potter for Defendant and Respondent.

OPINION

**DALSIMER, J.**—Plaintiff, John Kelly, appeals from the order of dismissal entered following the sustaining of demurrers of defendant, General Telephone Company, without leave to amend.

On August 5, 1980, plaintiff filed a complaint containing three causes of action: slander, interference with business relations, and intentional infliction of emotional distress. An uncertainty demurrer to the cause of action for slander was sustained, general demurrers to the other causes of action were sustained, and plaintiff was given leave to amend.

Plaintiff's first amended complaint contained five causes of action: slander, interference with prospective advantage, negligent infliction of emotional distress, intentional infliction of emotional distress, and violation of Labor Code section 1050. The general demurrers to the causes of action for interference with prospective advantage and violation of Labor Code section 1050 were sustained without leave to amend. The general demurrers to the other causes of action were sustained with 30 days leave to amend. Since the order sustaining the demurrers did not include a statement of the grounds on which the order was based as required by Code of Civil Procedure section 472d, we are unable to ascertain the basis for the trial court's decision.

Plaintiff filed a second amended complaint. The general demurrer to plaintiff's second amended complaint was sustained without leave to amend "per [the] points and authorities in [defendant's] moving papers."

I

In our review of the orders sustaining the demurrers without leave to amend, we accept as true all factual allegations properly pleaded. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]; *Goldstein* v. *Enoch* (1967) 248 Cal.App.2d 891,

894 [57 Cal.Rptr. 19].) Plaintiff's cause of action for slander, the first cause of action in the second amended complaint, alleges that plaintiff voluntarily terminated his 13-month period of employment by defendant in July 1979. Plaintiff had an excellent work record with defendant and had a reputation as "a person of good name, honesty and credit." In December 1979, plaintiff reapplied for employment with defendant and was informed that he was "'ineligible for rehire.'" Plaintiff alleges that his former supervisor, Tom Hansen, "acting within the scope of his employment," said to Mr. Robert McGinity, Mr. Hansen's supervisor and managing agent of defendant, that plaintiff "'misused company funds by buying materials without the proper authorization'" and falsified invoices. Plaintiff alleges that these statements were made to various other employees of defendant, including people in the personnel office. As a result, defendant changed plaintiff's personnel records to state that he was "'ineligible for rehire.'"

Plaintiff alleges that Hansen made the statements with intent to injure plaintiff's reputation. He alleges that Hansen made the statements for the reason that he hated plaintiff because of plaintiff's union activities.

■ Defendant argues that plaintiff did not allege publication of these statements because plaintiff alleged only that the statements were made by one of defendant's employees to other employees of defendant. This argument is without merit as publication occurs when a statement is communicated to any person other than the party defamed. (*Bindrim v. Mitchell* (1979) 92 Cal.App.3d 61, 79 [155 Cal.Rptr. 29], cert. den., 444 U.S. 984 [62 L.Ed.2d 412, 100 S.Ct. 490].) Under principles of respondeat superior, an employer may be held liable for a defamatory statement made by its employee. (See *Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 411 [134 Cal.Rptr. 402, 556 P.2d 764].) That publication may involve internal corporate statements was recognized in *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 944 [160 Cal.Rptr. 141, 603 P.2d 58], the court stating that internal company statements regarding the plaintiff's "'lack of job knowledge and cooperation'" were "published." (*Ibid.*)

■ The statement that plaintiff falsified invoices was slanderous per se in that it charged plaintiff with forgery. Civil Code section 46 defines slander in pertinent part as follows: "Slander is a false and unprivileged publication, orally uttered ... which: [¶] 1. Charges any person with crime ...." Forgery may be committed by falsification of invoices with intent to defraud. (Pen. Code, § 470.) The statement that plaintiff falsi-

fied invoices clearly implied that plaintiff did so with intent to defraud. (See *Carl* v. *McDougal* (1919) 43 Cal.App. 279, 281 [184 P. 885].)

■ The qualified privilege of Civil Code section 47, subdivision 3, may apply to the statement that plaintiff falsified invoices. That section provides in pertinent part that "A privileged publication . . . is one made . . . [¶] 3. In a communication, without malice, to a person interested therein, (1) by one who is also interested . . . ." ■ This qualified privilege may exist where the communicator and recipient have a common interest and the communication is reasonably calculated to further that interest. (*Deaile* v. *General Telephone Co. of California* (1974) 40 Cal.App.3d 841, 846 [115 Cal.Rptr. 582].) Communication among a company's employees that is designed to insure honest and accurate records involves such a common interest.

■ Malice necessary to prevent application of the qualified privilege may be alleged by pleading that the publication was motivated by hatred or ill will toward the plaintiff. (See *Sanborn* v. *Chronicle Pub. Co., supra*, 18 Cal.3d 406, 413-414.) Plaintiff alleges, "the statements set forth above were published . . . with express and implied malice and with design and intent to injure plaintiff in his good name, reputation and employment . . . . The statements were made with malice in fact by Tom Hansen . . . in that: . . . [¶] (c) Mr. Hansen . . . harbored ill will and hatred for the plaintiff in that he has a history of being active with his union . . . ." By these allegations, plaintiff sufficiently pleaded malice. (See *ibid.*) The trial court erred in sustaining the demurrer to the cause of action for slander.

## II

Plaintiff employs in part a "chain letter" or cumulative type of pleading. That is, plaintiff's cause of action for negligent infliction of emotional distress, the second cause of action in the second amended complaint, incorporates by reference the entire first cause of action. This type of pleading should be avoided as it tends to cause ambiguity and creates redundancy.

Plaintiff alleges that defendant had a duty not to accuse any of its employees of falsifying invoices without conducting a reasonable investigation. Plaintiff then alleges that defendant breached this duty "by its conduct mentioned herein." There is no express allegation of defendant's failure to investigate. Plaintiff further alleges that as a proximate result of defendant's breach, he suffered humiliation and emotional distress.

As discussed *ante* at page 285, the qualified privilege under Civil Code section 47, subdivision 3, protects a defendant from being held liable in defamation for statements made without malice by any of its employees to other employees of that defendant. Thus, an employer is not liable for defamation if one of its employees advises other employees, such as personnel officers, of a suspicion that a former employee falsified records as long as the communication is not motivated by malice. ■ We hold that this privilege applies with equal force to negligent infliction of emotional distress. ■ We also hold that a corporation may be held liable for negligent infliction of emotional distress when its employee, acting within the scope of his employment, makes a defamatory internal corporate communication concerning a third party without first conducting a reasonable investigation as to the truth of the matter if the communication is motivated by malice. A corporation can act only through its agents. Mr. Witkin has stated, "A private corporation is ordinarily liable under the doctrine of *respondeat superior* for torts of its agents or employees committed while they are acting within the scope of their employment." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 26, p. 2326, original italics; also see 1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, § 155, p. 754.) As mentioned *ante*, at page 284, the second amended complaint alleged that Mr. Hansen's acts were done within the scope of his employment by defendant.

*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 930 [167 Cal.Rptr. 831, 616 P.2d 813], held that there is a cause of action for negligent infliction of serious emotional distress. The court there held that such a cause of action was present because the defendant's conduct was objectively verifiable conduct that foreseeably elicited a serious emotional response, thus serving as a measure of the validity of the plaintiff's claim of emotional distress. Failure to investigate charges of falsification of invoices is also objectively verifiable and likely to cause serious emotional distress.

Although plaintiff alleged that he suffered emotional distress, he failed to allege the degree of emotional distress suffered. Serious emotional distress is an essential element of a cause of action for negligent infliction of emotional distress. (See *ibid.*) Since plaintiff failed to allege that defendant's conduct caused him to suffer serious emotional distress and also failed to allege that Mr. Hansen did not conduct a reasonable investigation of the charges, there was no error in sustaining the

demurrer to the second cause of action of the second amended complaint, but plaintiff should have been given leave to amend. (*Ibid.*)

### III

Plaintiff's cause of action for intentional infliction of emotional distress, the third cause of action in the second amended complaint, incorporates by reference both causes of action already summarized. Plaintiff alleges that the statements complained of were made to cause plaintiff to suffer emotional distress and caused plaintiff "humiliation, mental anguish and emotional and physical distress." He also alleges that defendant persisted in the described conduct even after plaintiff informed defendant that the statements were false. The allegation that defendant persisted in the described conduct is ambiguous in that various acts of defendant were alleged, including the change made in plaintiff's personnel records as well as the communication of the defamatory matter to numerous employees.

■ Our Supreme Court has stated that conduct may be considered outrageous when a defendant abuses a position that gives it the power to damage a plaintiff's interest. (*Agarwal* v. *Johnson, supra,* 25 Cal.3d 932, 946.) We hold that the spreading of deliberately false statements that a former employee in effect committed forgery is extreme and outrageous conduct. When such conduct results in alteration of the former employee's personnel records to reflect that he is ineligible for rehire, a position of power has been abused. As our Supreme Court has stated, abuse of a position that gives one the power to damage a plaintiff's interest is outrageous conduct.

■ "A prima facie case [of intentional infliction of emotional distress] requires: '(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress. [Citations.]'" (*Ibid.*) ■ As plaintiff has not alleged that he suffered severe emotional distress, the demurrer to the cause of action for intentional infliction of emotional distress should have been sustained, but plaintiff should have been afforded an opportunity to amend. If plaintiff amends, he should allege with greater specificity what conduct of defendant persisted after plaintiff informed defendant that the statements were false.

## IV

Plaintiff's cause of action for intentional interference with prospective advantage, the second cause of action in the first amended complaint, after incorporating by reference an inadequately pleaded cause of action for slander, alleges that defendant, through its employees, intentionally interfered with plaintiff's attempt to be rehired by defendant. ▮ A cause of action for intentional interference with contractual relations does not lie against a party to the contract. (*Dryden* v. *Tri-Valley Growers* (1977) 65 Cal.App.3d 990, 999 [135 Cal.Rptr. 720].) ▮ Plaintiff did not allege that defendant had a duty, either contractual or statutory, to rehire him. If such duty existed, the proper cause of action would be for its breach, not for interference with prospective advantage. (See *Larez* v. *Oberti* (1972) 23 Cal.App.3d 217, 226 [100 Cal.Rptr. 57].) The trial court ruled correctly in sustaining the demurrer to the cause of action for intentional interference with prospective advantage without leave to amend.

## V

The cause of action for violation of Labor Code section 1050, the fifth cause of action in the first amended complaint, after incorporating by reference the first two causes of action and inadequately pleaded causes of action for intentional and negligent infliction of emotional distress, alleges that defendant "knowingly caused ... its agents in its employ to commit a violation of Section 1050 of the California Labor Code" and that, as a proximate result thereof, plaintiff was not rehired. Labor Code section 1050 provides, "Any person, or agent or officer thereof, who, after having discharged an employee from the service of such person or after an employee has voluntarily left such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor." Labor Code section 1054 provides that any person who violates section 1050 is liable to the aggrieved party for treble damages.

▮ Labor Code section 1050 applies only to misrepresentations made to prospective employers other than the defendant. It does not apply to misrepresentations made by employees of the defendant to other of the defendant's employees.

Labor Code section 1050 was enacted in 1937 as a restatement of former Penal Code section 653e. (Stats. 1937, ch. 90, § 2, p. 185; Stats. 1937, ch. 90, § 1050, p. 211; Stats. 1937, ch. 90, § 8100, pp. 326-328.) Former Penal Code section 653e provided: "Any person, firm or corpo-

ration ... who, after having discharged an employee from the service of such person, firm or corporation or after having paid off an employee voluntarily leaving such service, shall ... misrepresent and thereby prevent or attempt to prevent such former employee from obtaining employment *with any other person, firm or corporation* ... shall be guilty of a misdemeanor .... [¶] ... [A]ny person, firm, association or corporation ... who shall violate any of the provisions of this act shall be liable to the party or parties aggrieved, in a civil action, to treble damages." (Stats. 1913, ch. 350, § 1, p. 712, as amended by Stats. 1929, ch. 586, § 1, pp. 988-989, italics added.) Labor Code section 2 provides, "The provisions of this code, in so far as they are substantially the same as existing provisions relating to the same subject matter, shall be construed as restatements and continuations thereof and not as new enactments." The pertinent provisions of Labor Code section 1050 are substantially the same as those of former Penal Code section 653*e*. It is apparent that the Legislature intended that Labor Code section 1050 would apply only to misstatements to other potential employers, not to misstatements made internally by employees of the party to be charged. The demurrer to the cause of action for violation of Labor Code section 1050 was properly sustained without leave to amend.

The order of dismissal is reversed. The trial court is directed to overrule the demurrer to the first cause of action of the second amended complaint and to grant plaintiff a reasonable time within which to amend the second and third causes of action of the second amended complaint. No leave shall be granted to amend the second cause of action of the first amended complaint or the fifth cause of action of the first amended complaint.

Spencer, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied October 27, 1982, and the opinion was modified to read as printed above.